IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| for the use and benefit of    DUNCAN | ) | |
| PIPELINE, INC., a Georgia corporation, and | ) | |
| DUNCAN PIPELINE, INC., | ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) | FILE NO. 4:11-CV-00092-WTM-GRS |
| | ) | |
| vs. | ) | |
| | ) | |
| WALBRIDGE ALDINGER | ) | |
| COMPANY, a Michigan corporation; | ) | |
| TRAVELERS CASUALTY AND SURETY | ) | |
| COMPANY OF AMERICA; a Connecticut | ) | |
| corporation; and LIBERTY MUTUAL | ) | |
| INSURANCE COMPANY, a Massachusetts | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

COMES NOW, THE UNTIED STATES OF AMERICA for the Use and Benefit of DUNCAN PIPELINE, INC., and DUNCAN PIPELINE, INC., ("Duncan") and files their Response in Opposition to Defendants' Motion in Limine to Exclude Expert Testimony, showing this Honorable Court as follows:

### I.      FACTUAL BACKGROUND

In July 2009, Duncan contracted with Walbridge Aldinger Company ("Walbridge") to install the potable water distribution system on a several hundred acre site at Ft. Stewart, Georgia (the "Project") . (Duncan Dep. Ex. 1/Ex. A hereto).  Walbridge had been hired by the United States Army Corps of Engineers (the "Corps") to be the general contractor for several projects at Ft. Stewart, Georgia.  (Pangborn Dep. pp. 24-25, Excerpts Ex. B hereto).

During completion of the Project, Duncan was ordered to perform work by Walbridge that Duncan contended was not called for by its subcontract with Walbridge (the "Subcontract"). (Webb Dep. pp. 28-29, excerpts attached as Ex. C hereto). Duncan submitted a claim against Defendants seeking compensation for work that was called for by the Subcontract and for work that Duncan was ordered to perform that was outside the scope of the Contract. (W. Duncan 5/4/2012 Dep. Ex. 61/Ex. D hereto). The claim was for the following amounts:

| | |
|---|---|
| Material Cost Increases | $26,015.47 |
| Cost to Purchase Standard | $2,342.37 |
| Fire Hydrant Rise Adjustment | $20,690.90 |
| Moving Spoil Pile 06/22 to 06/24/20101 | $2,547.16 |
| Change Order #5 Repair Gas Main | ($717.25) |
| Change Order #6 Various Additional Items | $119,305.13 |
| Tie in Altitude Valve & Negotiate Utilities | $10,168.90 |
| Repair 2" Water Line @ Storm Crossing | $582.17 |
| Bell Restraints--Equitable Adjustment | $339,459.83 |
| Excessive Excavation Depth | $403,487.43 |
| Pay Request #12 | $80,784.53 |
| Interest | TBD |
| Balance left on Contract | $78,435.95 |
| Restocking Fees | $2,659.19 |
| Excessive Remobilization -- Demobilization | $114,376.15 |
| Additional Bond Cost | $13,700.97 |
| **Total Claim:** | **$1,213,838.90** |

(W. Duncan 5/4/2012 Dep. Ex. 61/Ex. D hereto).

Plaintiffs have retained Brian A. Rindt, P.E. ("Rindt") to offer opinions in support of these claims. Mr. Rindt is registered professional engineer in Georgia and six other states. (Rindt Dep. Ex. 43/Ex. E hereto). Rindt has a Bachelor of Civil Engineering Degree from Auburn University, a Master of Science Degree in Environmental Engineering from Auburn University. (Id.) Rindt is a co-founder of Rind-McDuff Associates, a civil and environmental engineering firm with offices in Marietta and Gainesville, Georgia that provides engineering, design, and project management services. (Id.; Rindt dep. pp. 10/Ex. F hereto). Rindt is a past president of the Georgia Association

2

of Water Professionals and is past chairman of the board of directors of the Georgia Water and

Wastewater Institute. (Rindt Dep. Ex. 43/Ex. E hereto). He is a registered professional engineer in

seven (7) states. (Id.) Rindt has served as project manager and senior design engineer for the water

systems or water system expansions for several counties, numerous municipalities, and various

private developments. (Id.)

Rindt has experience with generating construction schedules, including activity sequencing,

and has served as the owner's engineer on numerous projects. (Rindt Dep. pp. 11-12/Exhibit F

hereto). For 35 years, Rindt has specific experience estimating costs for utility water line

installations for private and governmental entities and creating budgets related to such construction

projects. (Id. at 14, 20). Moreover, one third to one half of Rindt's projects involve federal funding,

many of which the federal acquisition regulations apply. (Id. at 24).

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Standard of Review

The admissibility of expert testimony is guided by Federal Rule of Evidence 702 and Daubert

and its progeny. In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court

considered the application of Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993) to expert

testimony being offered by an engineer, explaining:

> A trial judge determining the admissibility of an engineering expert's testimony may
> consider one or more of the specific Daubert factors. The emphasis on the word
> "may" reflects Daubert's description of the Rule 702 inquiry as "a flexible one." 509
> U.S. at 594. The Daubert factors do not constitute a definitive checklist or test, id. at
> 593, and the gatekeeping inquiry must be tied to the particular facts, id. at 591. Those
> factors may or may not be pertinent in assessing reliability, depending on the nature
> of the issue, the expert's particular expertise, and the subject of his testimony. Some
> of those factors may be helpful in evaluating the reliability even of experience-based
> expert testimony.

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

The 11th Circuit Court of Appeals applied these principles in Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009). There, the insurance company designated Dr. Harold Skipper to offer expert testimony regarding "general insurance industry financial underwriting standards and risk management issues." Id. at 1338. The Plaintiff moved to exclude Skipper, arguing he was unqualified and his testimony was unreliable. Id. In affirming the trial court's refusal to exclude the Skipper's testimony, the 11th Circuit explained "[s]tandards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." Id. (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151, 119 S. Ct. 1167, 1175-76, 143 L. Ed. 2d 238 (1999). Rather, a "district court may decide that nonscientific expert testimony is reliable based "upon personal knowledge or experience." Id.; see also United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007) (affirming trial court's admission of expert testimony based on "extensive experience and training in fingerprint analysis, including experience regarding the durability of fingerprints on different surfaces and in different environmental conditions and analysis of fingerprint smudging pressure"); FCCI Ins. Group v. Rodgers Metal Craft, Inc., 2008 U.S. Dist. LEXIS 57649 (M.D. Ga. July 28, 2008) (expert's "experience alone is sufficient to explain the basis for his generalized description of standard insurance policy terms."); R&R Int'l, Inc. v. Manzen, LLC, 2010 U.S. Dist. LEXIS 94550, 23-24 (S.D. Fla. Sept. 10, 2010) (expert's "resume, Affidavit, and testimony reflect professional experience endowing [expert] with an appropriate background for serving as an expert in analyzing future lost profits and industry standards.")

As previously noted by this Court in considering the reliability prong of Daubert, the Advisory Committee's commentary to Rule 702 establishes that the phrase "principles and methods" is a flexible one. Hudgens v. Durrence, 2008 U.S. Dist. LEXIS 110142 (S.D. Ga. Dec. 29, 2008).

The Court in <u>Hudgens</u> pointed out the committee's notes to the 2000 Amendments to Rule 702. The notes provide:

> While the terms "principles" and "methods" may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony based on technical or other specialized knowledge. For example, when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. ***The method used by the agent is the application of extensive experience*** to analyze the meaning of the conversations.

<u>Id.</u> (emphasis added). The <u>Hudgens</u> Court went on: "That flexibility is important when…an expert's testimony is simple and straightforward, because legal tests crafted with complex applications of the scientific method in mind often do not apply cleanly to simple expressions of technical expertise." <u>Id.</u> In the <u>Hudgens</u> case, the expert was allowed even though his "principle" was information he had learned in text books that was held in his memory. The Court found that the application of his memory of what he had read in the text books was sufficiently reliable. <u>Id.</u>

This Court has also cautioned:

> [T]he rejection of expert testimony is the exception rather than the rule. Although the judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value, this role is not intended to supplant the adversary system or the role of the jury. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

<u>Jenifer v. Fleming, Ingram & Floyd, P.C.</u>, 2008 U.S. Dist. LEXIS 17740, 10-11 (S.D. Ga. Mar. 7, 2008) (citations and quotations omitted).

Moreover, Courts are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." <u>Koch v. Koch Indus., Inc.</u>, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); accord <u>Sperberg v. Goodyear Tire & Rubber Co.</u>, 519 F.2d 708, 712 (6th Cir.1975). To obtain the exclusion of

evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all

potential grounds. See Ind. Ins. Co. v. GE, 326 F. Supp. 2d 844 (N.D. Ohio 2004) . "Unless

evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions

of foundation, relevancy and potential prejudice may be resolved in proper context." Ind. Ins. Co.,

326 F. Supp.2d at 846.  In this case, Defendants cannot show that Rindt's opinions are clearly

inadmissible on all potential grounds.  Since this Court would be in a better position at trial or a

Daubert hearing to assess the value and utility of Rindt's opinions and therefore, Plaintiff asks this

Court to defer[1] the evidentiary ruling until such time.

B.     Rindt is Qualified to Testify regarding the Matters He Intends to Address

Rindt's testimony at trial will focus on the interpretation of various contract plans, drawings,

and specifications, application of industry standards and practices to the facts of this case, and

associated costs estimates for completion of work performed by Duncan.  Rindt's experiences as a

design engineer and project manager for water distribution system uniquely qualify him to provide

such expert opinion.  Moreover, Rindt, a professional engineer, testified he has specific experience

estimating water utility projects; experience which is at the crux of this dispute.  (Rindt Dep. pp. 14,

20/Excerpts attached hereto as Exhibit "E').

---

[1] Defendants argue that any trial of this matter should be a bench trial.  Plaintiffs disagrees. See
Bank S., N.A. v. Howard, 264 Ga. 339, 340 (1994) ("pre-litigation contractual waivers of jury trial
are not provided for by our Constitution or Code and are not to be enforced in cases tried under the
laws of Georgia.");  United States for the Benefit & Use of EPC Corp. v. Travelers Cas. & Sur. Co.
of Am., 423 F. Supp. 2d 1016, 1020 (D. Ariz. 2006) ("In Miller Act cases, the Court must act like a
court sitting in diversity and  use the law of the forum state to construe the agreement." (quotations
omitted));  Convergys Corp. v. Keener, 276 Ga. 808, 810, 582 S.E.2d 84, 85-86 (2003) (Georgia
courts will not apply "the law of the jurisdiction chosen by parties to a contract . . . where application
of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this
state.")  However, if this Court concludes a bench trial is appropriate,  it is well-established that the
barriers under FRE 702 "are even more relaxed in a bench trial situation, where the judge is serving
as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence
on a jury. . . . There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping
the gate only for himself." United States v. Brown, 415 F.3d 1257, 1268-1269 (11th Cir. 2005).

Defendants' argument that Rindt is unqualified because he lacks experience with Corps projects and has never served as a utility installer and excavator is completely unpersuasive. On this point, the case of Wilson v. Blue Bird Corp., 2010 U.S. Dist. LEXIS 144144 (N.D. Ga. Oct. 27, 2010) is instructive. There, Plaintiff offered expert King, who was not a professional engineer, to provide opinion regarding accident reconstruction. Id. at 10. Defendant sought to exclude King's testimony because of his limited experience with motor coaches, arguing he was "not applying any verifiable technical or engineering principles to his evaluation" of the product in question. Id. In finding King qualified, the Court explained:

> The Court, however, concludes that Defendants' arguments about Mr. King's lack of motor coach experience are better left to the jury. Defendants can use those arguments in cross-examination to discredit Mr. King's testimony. Rule 702, however, takes a liberal view of expert witness qualifications and an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case . . . . Although Mr. King does not specialize in motor coaches, he has experience with cars and helicopters, and, more specifically, he has experience with weight issues in moving vehicles. Given his experience and engineering expertise, his opinion that the cargo weight in the 450 LXi cannot be carried in a practical fashion, and that this reduces the utility and value of the 450 LXi, is sufficiently reliable to present to the jury.

Id. at 18-19 (quotations and citations omitted); See also McGee v. Evenflo Co., 2003 U.S. Dist. LEXIS 25039, 7-8 (M.D. Ga. Dec. 11, 2003) (while expert's qualifications were not "particularly impressive in the precise area of child seat design and manufacturing; nonetheless, the Court [did] not find that the deficiencies in his training and professional experience, standing alone, warrant the exclusion of his testimony"); Calta v. N. Am. Arms, Inc., 2007 U.S. Dist. LEXIS 96116 (M.D. Nov. 27, 2007) (allowing Plaintiff's expert to testify regarding gun safety mechanism despite expert not being an "engineer, commercial gunsmith or firearms designer [and having] never been employed by a firearms manufacturer"); Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar, 345 F.3d 15, 24-25 (1st Cir. P.R. 2003) (holding that it would have been an abuse of discretion for

the court to exclude an expert doctor's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics when a pregnancy was at issue.)

In this case, Rindt's qualification as an expert is established by a combination of knowledge, skill, experience, training and education. Defendants have offered no explanation of why specific experience with Corps project should be required here.  First, it should be noted that Rindt does have specific experience working for the Corps.  (Rindt Dep. pp. 22-23/Exhibit F hereto).  Additionally, the specifications incorporated into the Subcontract include AWWA M23, an industry wide standard that Rindt specifically incorporates into his report.   (Rindt Dep. Ex. 43/Exhibit "E" hereto).  Moreover, one third to one half of Rindt's projects involve federal funding, many of which the federal acquisition regulations apply.  (Rindt Dep. p. 24/Exhibit F hereto).

It is well-established that "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Clena Invs., Inc. v. XL Specialty Ins. Co., 2012 U.S. Dist. LEXIS 10626 (S.D. Fla. Jan. 30, 2012).  While Rindt is certainly more than minimally qualified, any questions of qualifications specific to his prior experience on Corps project or experience with the operation of an excavator goes to the credibility and weight of his testimony, not its admissibility.

C.      Rindt's Opinions Regarding Specific Claims Are Admissible

1.      **Testimony Regarding Bell Restraints Should Be Admitted**

One of the central issues in this case is whether the original contract documents required Duncan to install thrust restraints[2] on the water distribution pipe that adjoin in-line gate valves.  (W. Duncan 2/24/2012 Dep. p. 74/Excerpts Ex. G hereto).  After it began its work, Duncan was ordered

---

[2] In places in the record, thrust restraints are referred to as "bell" restraints, which is a form of thrust restraints.  In a water distribution system, bell restraints help secure pipe when a bell side of pipe is joined together with a non-bell side of pipe so as to prevent the thrust from disconnecting the pipe.  (W. Duncan 2/24/2012 Dep. p. 73).

to treat such in-line gate valves as "dead-ends" for purposes of calculating the number of feet of pipe that had to be restrained on either side of such in-line gate valves, significantly increasing the number of required bell restraints from what had been bid. (Id. at 81-84). One of the issues at trial will be whether the contract documents were ambiguous on whether such in-line gate valves should be treated as "dead-ends" for purposes of calculating the number of feet of pipe that must be restrained on each side of in-line gate valves.

Chris Roethemeyer, the person responsible for quality control on the water distribution system on behalf of Walbridge, testified that he thought treating the in-line gate valves as "dead-ends" for purposes of thrust restraint was an "additional costs" to Duncan and he told John Walker, Walbridge's Project Manager, that "additional cost" should be submitted to the Corps. (Roethemeyer Dep. p. 72-74/Excerpts attached Ex. H hereto). By contrast, John Walker wrote on September 15, 2010 that "we believe the requirements for the Bell Restraints are clearly a matter contained within your contract documents, and therefore, not the subject of a proper request for equitable adjustment." (Walker Dep. Ex. 29/Ex. I hereto).

Walbridge's expert, Benjamin Studdard, however, agreed the treatment of inline gate valves as "dead-ends" for purposes of restraining adjoining pipe was not clear from the contract documents, testifying:

> Q.   You would agree with me that nothing in the drawings and specifications made clear that in-line gate valves should be treated as dead ends for purposes of restraint?
> A.   I didn't think it was sufficiently clear or stated to remove any uncertainty or ambiguity of competitive bidders.

(Studdard Dep. p. 102/Excerpts Ex. J hereto).

Rindt will offer the following opinion:

Following a search of the references cited above, the project plans and specifications, and the codes and contract, I can find no such requirement. Project plan sheet CU502 deals explicitly with the piping thrust restraint requirements. No valves or valve restraints are shown. Detail 6 on plan sheet CU504 shows a valve, but the title of the detail ("typical line stub") indicates that the purpose of the detail is to show the required construction methods at a "line stub" and the type of cap at the end of the stub (M.J.).

The AWWA Standard C605 has been cited as the source of the requirement to restrain valves as if they were dead ends. . . . [I]t should also be noted that [AWWA Standard C605] states in the Thrust Restraint – General section of C605 that "Unbalanced forces, however, are developed at … valves and dead ends," and goes on to state that "… the design of thrust restraint systems is the responsibility of an engineer with experience in water main construction."

. . .

In short, there is no requirement in the plans and specifications for the added thrust restraints that were requested for the valves. And, I might add that the standards of practice in the industry do not require thrust restraints on valves installed on straight lengths of buried pipe.

(Rindt Dep. Ex. 43/Ex. E hereto).

During Rindt's deposition, in response to whether a specific detail in the drawings CU 501, Detail 1, which Walbridge's expert relies on, placed Duncan on notice that in-line gate valves should be treated as dead-ends for purposes of restraint, Rindt explained: "This restraint in my view is simply the gate valve within the vault." (Rindt Dep. p. 36/ Ex. F hereto).

It is well-established that "experts are permitted to testify as to terms of art contained in contracts." TransPro, Inc. v. Leggett & Platt, Inc., 297 Fed. Appx. 434, 442 (6th Cir. 2008); see also Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 611 (5th Cir. 2000) (finding expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); WH Smith Hotel Servs., Inc. v. Wendy's Int'l Inc., 25 F.3d 422, 429 (7th Cir. 1994) (finding no error in admitting expert testimony regarding customary and usual meaning of rent provisions in the commercial real estate industry); Central Elec. Coop v. U.S. West, Inc., 2007 U.S. Dist. LEXIS 90069, 2007 WL 4322577 (D. Or. 2007) (relying on expert analysis of meaning of words in a regulation).  Specifically, in Kona Tech. Corp. v. Southern Pac. Transp. Co., 225 F.3d 595, 611 (5th Cir. 2000), the Court rejected a Daubert challenge to expert testimony regarding the meaning of technical terms in a contract, explaining that the expert's "credentials adduced at trial establish that he was qualified to render expert testimony."

Coyote Portable Storage, LLC v. PODS Enters., 2011 U.S. Dist. LEXIS 51899 (N.D. Ga. May 16, 2011), which is relied upon by Defendants, is clearly distinguishable.  First, that case applied Florida, which the Court explained required that the determination and resolution of ambiguity in contract to be decided as a matter of law. Id. at 10. Here, whether Georgia or Michigan law applies, a fact question for the jury exists once a determination of ambiguity has been made. See Klapp v. United Ins. Group Agency, Inc., 663 N.W.2d 447, 453-454 (Mich. 2003) ("It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury."); ESI Cos. v. Fulton County, 271 Ga. App. 181, 183 (2004) ("a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.")  Second, Coyote Portable Storage, LLC merely held that "expert legal opinion is not admissible under Fed.R.Evid. 702." Id. at 8 (emphasis added).  Quite clearly,

Rindt's testimony is not being offered as a legal opinion, but rather to assist the Court in construing

technical terms in the Contract Documents. Similarly, <u>Cook v. Sheriff of Monroe County</u>, 402 F.3d

1092 (11th Cir. 2005) is inapposite since it addresses the application of FRE 704.

Here, Rindt explains in his report in great detail how he reached the conclusion that nothing

in the Contract Documents required Duncan to install additional restraints on pipes adjoining in-line

gate valves.  In this case, Rindt started by reviewing the basic sources of evidence to formulate an

opinion based upon a course that is typically followed in the engineering field.  Combined with his

experience, this methodology creates sufficient reliability to be admissible under FRE 702, <u>Daubert</u>,

and its progeny. <u>See</u> <u>Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC</u>, 555 F.3d 1331 (11th Cir.

2009).

### 2.    Rindt's Methodology Regarding the Fire Hydrant Adjustment is Reliable

Duncan was requested[3] to adjust certain fire hydrants by Walbridge at the Project that

Walbridge contended was not installed to the appropriate grade. (Walker Dep. p. 42/Excerpts Ex. K

hereto).  According to Walbridge's expert, there are three basic reasons why the fire hydrant would

need to be adjusted to match finish grade:

> Q.    So if the fire hydrants were at the wrong height -- let me see if I can understand. I understand there to be three potential causes. Number one, the main was buried at the wrong elevation. Number two, there's a discrepancy -- really two. The main was buried at the wrong height. Or number two, something is incorrect about the finish grade; is that correct?
> A.    That's correct.
> Q.    All right. For being buried at the wrong depth, there's two potential causes. The cut and fill information provided on the stake was incorrect, or Duncan misapplied the information that was provided to them; is that correct?

[3]   Duncan is demanding in this lawsuit $20,690.90 for fire hydrant adjustment it completed under protest.  Walbridge is claiming a back charged amount for other fire hydrant adjustment completed by another subcontractor after, according to Walbridge, Duncan failed to complete necessary fire hydrant adjustments.  The basic question is the same:  was Duncan responsible pursuant to the Contract Documents and site conditions to adjust the fire hydrants without additional compensation?

A.    Yes.
Q.    And those are the only three options that could have affected something
      being incorrect about the fire hydrants, correct?
A.    I think so.

(Studdard Dep. pp. 202-03/Excerpts Ex. J hereto).

Here, it is undisputed that Angelo Iafrate Construction Company ("Angelo Iafrate"), another

subcontractor at the Project, was to provide staking for the water distribution system to be installed

by Duncan. (DeFinnis dep. p. 123/Excerpts Ex. L hereto). The evidence at trial will also show that

Duncan installed the water line, and therefore the fire hydrants, per the stakes and cut sheets

provided by Angelo Iafrate. Moreover, it undisputed that Angelo Iafrate was to provide finish grade

for the Project and that neither Angelo Iafrate nor the Corps did anything to verify that the site was

built to finished grade per the Contract Documents. (Id. at 60-61).

Therefore, Duncan's position at trial will be that the Angelo Iafrate either provided incorrect

information on the stakes and cut sheets or that the fire hydrants needed to be adjusted because the

Project was not built to the finished grade called for by the Contract Documents. Rindt's anticipated

testimony supports this explanation.   Rindt explains in his report that the lack of information

provided to Duncan made it difficult to properly place the hydrants to finished grade. (Rindt Dep.

Ex. 43/Ex. E hereto).  Specifically, Plaintiff was required to install hydrants to subgrade because

Duncan was not provided with finished grade at the time of the water line installation, which Rindt

says was a reasonable expectation for Duncan pursuant to the Contract Documents. (Rindt Dep pp.

62-63/Exhibit F hereto). Rindt specifically bases this opinion on the evidence given in this case and

his experience with the installation of water lines based on finished grade. (Id. at 62-63).

"[I]t is more common that engineering experts state that their opinions are not based upon

any scientific method but on general experience and knowledge after a review of evidence." Reid v.

BMW of N. Am., 430 F. Supp. 2d 1365, 1370 (N.D. Ga. 2006) (holding that testimony reliable

based on engineering expert's "review of photographs of the radiator, interview with plaintiff, review of thousands of documents, and his own experience analyzing similar failed radiators.")  Here, similar to Reid, Rindt relied on his interviews with Ward Duncan, review of construction documents, review of industry guides such as the Water Distribution Systems Handbook by McGraw-Hill, and construction photographs.  (Rindt Dep. Ex. 43/Ex. E hereto).  Therefore, based on his review of the evidence in this case and his experience, Rindt's testimony regarding the fire hydrants being set to finish grade per industry practices[4] is sufficiently relevant and reliable under FRE 702, Daubert, and its progeny to be admissible.  See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009).

### 3.    Rindt's Opinions regarding Stored Materials Satisfies Rule 702

Rindt testified at his deposition:

> [Duncan] should have been allowed to store materials and be paid for the stored materials, *as is customary in the industry*, and since he was not allowed to do that, he had to experience the price increases in materials with time that he would not otherwise have incurred.

(Rindt Dep. p. 72/ Ex. F hereto) (emphasis added).

In reaching this conclusion, Rindt relied on the custom of the industry, his interview with Ward Duncan, and his review of the Contract Documents.    As in Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009), Rindt should be allowed to testify regarding general industry standards and practices. Id. at 1338-39; See also United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007);  FCCI Ins. Group v. Rodgers Metal Craft, Inc., 2008 U.S. Dist. LEXIS 57649 (M.D. Ga. July 28, 2008).  Therefore, under established precedent Rindt's testimony is reliable under FRE 702, Daubert and its progeny.

---

[4] Notably, Walbridge's expert repeatedly relies on "industry standard," without reference to a specific document, to support his opinions in this case.  (Studdard Dep. p 159-160/ Excerpts Ex. J hereto).

The Court must also determine whether the proffered evidence would be helpful to the trier of fact. <u>BioCore, Inc. v. Khosrowshahi</u>, 183 F.R.D. 695, 699 (D. Kan. 1998). In so doing, the Court examines specific subject areas of proposed expert testimony to ascertain whether each is sufficiently tied to the facts of the case so that it will be helpful to the fact finder. <u>See Id.</u> Any doubts should be resolved in favor of admissibility. <u>See Id.</u> In this case, Rindt's testimony on the issue of stored materials will be helpful to a jury. He can speak to the customary allowance for the storage of materials and how and why it is at issue in this case. Because the testimony on this issue to be offered by Rindt would be helpful and is based on his personal experience of the past 35 years, it should be allowed.

### 4.    Rindt's Opinion regarding the Spoil Piles Satisfies Rule 702

Rindt will offer the following testimony at trial regarding the spoil pile:

> When Duncan bid this project, [it] did not include a cost for moving a spoil pile that was not shown on the plans. Likewise, there is no provision in the contract documents that requires a subcontractor to absorb the cost of moving spoil piles left by others. In this case, a spoil pile (of dirt) was left by the paving contractor where the water line was set to be laid. Duncan moved the spoil pile at his expense and should be reimbursed for this cost.

(Rindt Dep. Ex. 43/Ex. E hereto).

Walbridge has claimed that the Contract Documents required Duncan to move the spoil piles at its own expense. (Walker Dep Ex. 5/ Ex. M hereto). Rindt's testimony is helpful to the jury because it helps the jury understand the meaning of the Contract Documents, which is disputed between the parties on this issue. <u>See Kona Tech. Corp. v. S. Pac. Transp. Co.</u>, 225 F.3d 595, 611 (5th Cir. 2000); <u>WH Smith Hotel Servs., Inc. v. Wendy's Int'l Inc.</u>, 25 F.3d 422, 429 (7th Cir. 1994).

Moreover, industry practices are also helpful to the trier of fact where the Contract Documents are silent on the issue. See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009); United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007).

Since this testimony will be helpful to the jury and it is reliable based on Rindt's industry experience combined with his methodical review of the evidence in this case, Rindt's testimony regarding the spoil piles is admissible under FRE 702, Daubert, and its progeny.

### 5.     Rindt's Opinion regarding Change Order 005 Should Be Admitted

As noted in his report regarding Change Order No. 5,[5] Rindt will testify at trial that Duncan should not be back charged to damage to the gas main because it was improperly located.  (Rindt Dep. Ex. 43/Ex. E hereto).  His specifically identifies "Duncan Field Report dated 5/4/10 regarding gas line location" as something he relied upon in reaching this conclusion.  (Id.) Rindt's testimony that pursuant to industry practices a contractor should not be charged for mis-located utility conflicts is certainly within his area of expertise based on his prior work as an owner representative.  Since this testimony will be helpful to the jury and it is reliable based on Rindt's industry experience combined with his review of the subject field report, Rindt's testimony regarding the gas main back-charge is admissible under FRE 702, Daubert, and its progeny.

---

[5] To date, Walbridge has not contested the validity of the contents of Change Order No. 6, which it acknowledges it has approved. (Walker Dep. 118-19).  It is Duncan's understanding that these funds, as well as funds associated with Payment Application No. 12 and the balance left on the contract are being withheld because of unrelated claims by Walbridge of uncompleted work and associated back charges. (Walker Dep. 90).  It is not anticipated that Rindt will offer testimony regarding the approved items in Change Order No. 6, Payment Application No. 12, or Contract Balance unless at trial Walbridge contests specific contents therein which had been previously approved.  As noted at his deposition, Rindt may offer testimony in rebuttal to Walbridge's claims for back charges. Duncan would urge the Court to reserve ruling on Rindt's testimony regarding Change Order No. 6, Payment Application No. 12, and the Contract Balance because it is likely he will not offer any such testimony at trial.

6. **Rindt's Opinion regarding the Tie-in of the Altitude Valve Is Admissible**

Rindt will offer the following testimony at trial regarding the spoil pile:

Under the specific water distribution components listed in Exhibit D [of the Subcontract], neither the "water tank" nor the "altitude valve" (associated with the water tank) is listed. There are two plan sheets that deal with the water tank: CU420 ("Tank Plans") and CU421 ("Tank Details"). The altitude valve is clearly shown in plan and section views on sheet CU421 ("Tank Details"). Clearly, the altitude valve was considered by the design engineers to be a water tank component. It would therefore be the duty of the water tank contractor to install the altitude valve and connect the altitude valve to the water tank and to the water line stubout set specifically for that purpose. The duty of the "water distribution" contractor (Duncan) was to set the stubout for connection to the altitude valve.

Duncan was asked to install the altitude valve and to connect it to the water tank and to the stubout, clearly an extra to his contract. Duncan was paid for the altitude valve installation, but never paid for the piping connection from the altitude valve to the water tank or from the altitude valve to the stubout.

(Rindt Dep. Ex. 43/Ex. E hereto).

John Walker, Walbridge's project manager, concedes that the altitude valve was called for in Walbridge's contract with the Corps, but that it was not included in any subcontractor's contract. (Walker Dep. pp. 116-17). Notably, Walker testified at his deposition he did not know why Duncan, who had undisputedly performed the work, was not paid for tying the altitude valve to the water tank. (Walker Dep. p. 144/ Excerpts Ex. K hereto).

17

Since Walbridge has contested that it owes money to Duncan for tying in the attitude valve to the water tank, Rindt's testimony is helpful to the jury because it helps the jury understand whether anything in the Contract Documents placed Duncan on notice that it was required to install the altitude valve pursuant to the original scope of the Subcontract. See Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 611 (5th Cir. 2000); WH Smith Hotel Servs., Inc. v. Wendy's Int'l Inc., 25 F.3d 422, 429 (7th Cir. 1994).

Since this testimony will be helpful to the jury and it is reliable based on Rindt's industry experience combined with his methodical review of the drawings in this case, Rindt's testimony regarding the altitude valve is admissible under FRE 702, Daubert, and its progeny.

### 7.   Rindt's Opinion regarding Two Inch Water Line Is Admissible

Defendants have refused to pay Duncan for the repair of a two (2) inch water line purportedly because Duncan performed work out of sequence. (Walker Dep. Ex. 5/ Exhibit M). Rindt offers an opinion that there is no evidence that the repair of the two (2) inch water line was necessitated because of Duncan's performance of work out of sequence. (Rindt Dep. Ex. 43/Ex. E hereto). Rindt testified specifically regarding his experience with construction activity sequencing. (Rindt dep. pp. 11-12/Ex F hereto). Rindt's knowledge of industry practices relating to sequencing of work is helpful to the jury in determining whether Defendant's defense to this claim for compensation is valid. See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009); United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007). Since this testimony will be helpful to the jury and it is reliable based on Rindt's industry experience combined with his methodical review of the evidence in this case, Rindt's testimony regarding the water line is admissible under FRE 702, Daubert, and its progeny.

### 8.   Rindt's Opinion regarding Excessive Excavation Is Admissible

Duncan claims that nothing in the Contract Documents placed it on notice when bidding the job that it would have to bury any of the pipe more than 36 inches deep. Once in the field, because utility conflicts and the type of vault boxes that were required, Duncan had to bury much of the pipe at a more deeper depth. The difference in depth between what was bid and what actually occurred is the basis for Duncan's claim for additional compensation related to excessive excavation. The crux of this issue is whether the Contract Documents required Duncan to bury the water line deeper than 36 inches.

Defendants attack the admissibility of Rindt's testimony regarding Duncan's claim for compensation related to excessive excavation on several fronts. Defendants' claim that Rindt is not qualified to offer opinion  regarding costs related to excavating dirt for the installation of a water distribution system is patently erroneous. Rindt explained that he determined the "difficulty factor" to calculate Duncan's damages based upon Duncan "working around other utilities, they ran into ground water at deeper depths, the deeper vaults, and changes in location of the water line. . . unexploded ordinance that was involved." (Rindt Dep. pp. 97-98). Rindt would considers similar factors when estimating water utility projects and while serving as an owner's representative. (Rindt dep. pp. 13-14, 20). Therefore, Rindt is certainly qualified to provide the subject testimony and Defendants' objections, which deal with the quantity of his prior experience excavating dirt, "[go] to credibility and weight, not admissibility." Clena Invs., Inc. v. XL Specialty Ins. Co., 2012 U.S. Dist. LEXIS 10626 (S.D. Fla. Jan. 30, 2012); see also McGee v. Evenflo Co., 2003 U.S. Dist. LEXIS 25039, 7-8 (M.D. Ga. Dec. 11, 2003).

Defendants' claim that Rindt's testimony is irrelevant must also be rejected. Rindt testified that he thought it was a reasonable conclusion for Duncan to bid the job assuming 36 inches of dirt

cover. (Rindt Dep. p. 41-42/ Ex. F hereto).  In direct rebuttal to Defendants' claim regarding the

Contract Documents, Rindt testified that the drawings were "misleading" "from a visual point of

view." (Id.).  As noted above, other courts have consistently held such testimony is helpful to the

trier of fact when construing technical terms in contract documents. See Kona Tech. Corp. v. S. Pac.

Transp. Co., 225 F.3d 595, 611 (5th Cir. 2000); WH Smith Hotel Servs., Inc. v. Wendy's Int'l Inc.,

25 F.3d 422, 429 (7th Cir. 1994).

      Moreover, Rindt's testimony regarding his methodology for calculating the extra excavation

costs is also reliable. (Rindt Dep. 91-92).  A similar issue was considered in GASA, Inc. v. United

States, 88 Fed. Cl. 752 (Fed. Cl. 2009).  There, the Defendant argued that Plaintiff's expert did not

"appropriately address the harm suffered by plaintiff as a result of the  Corps' delay in issuing the

[Notice to Proceed]."   Id. at 756.  Plaintiff's expert "arrived at his revised direct costs figure by

performing a simple mathematical calculation on the costs that he believed were relevant." Id. at

757.  In rejecting the Defendant's claim that the expert's methodology was unreliable, the Court

explained:  "His  method  of  calculation--the  mere  adding  of  a  column  of  figures-is  hardly

controversial and is sufficiently reliable for the purposes of determining admissibility." Id. The

Court held that "defendant's attack on [Plaintiff's] methodology is best left for cross-examination."

Id. Rindt's calculations are certainly not unreliable.

      Moreover, the fact  that Rindt made an "averaged" the width of the pipe ditch does not render

his opinion unreliable. See Campos v. MTD Prods., 2010 U.S. Dist. LEXIS 2932 (M.D. Tenn. Jan.

14, 2010) (the subject expert, "based upon his research and experience, is attempting to provide a

necessarily rough estimate to quantify the risk here.").  Here Rindt is relying on his interview of

Ward Duncan, construction photographs, and his experience to create a reliable average of the width

of the ditch that was required by the changed conditions. (Rindt Dep. pp. 92-93).  See also Am.

Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009); United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007).

Since this testimony will be helpful to the jury and it is reliable based on Rindt's industry experience combined with his methodical review of the evidence in this case, Rindt's testimony regarding the excessive excavation is admissible under FRE 702, Daubert, and its progeny.

### 8.     Rindt's Opinion regarding Restocking Fees Should Be Admitted

Defendants have refused to pay Duncan for these restocking fees because Duncan's "default." (Walker Dep Ex 5/Ex M hereto).  Rindt offers an opinion that there is no evidence of default in this case. (Rindt Dep. Ex. 43/Ex. E hereto). Rindt's knowledge of industry practices, arising out of his work as an owner's representative, relating to what actions constitute a default is helpful to the jury in determining whether Defendants' defense to this claim for compensation is valid. See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009); United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007).  Since this testimony will be helpful to the jury and it is reliable based on Rindt's industry experience, Rindt's testimony regarding the water line is admissible under FRE 702, Daubert, and its progeny.

### 9.     Rindt's Opinion regarding the Excessive Mobilization/Demobilization Is Admissible

Rindt will testify at trial that "Duncan had to demobilize and remobilize to different locations at the project site due to the poor coordination of the project as a whole, and more specifically, poor coordination of the subcontractor's activities resulting in Duncan not being able to carry out its contractual obligations in a steady, organized and continuous stream of activity." (Rindt Dep. Ex. 43/Ex. E hereto). Rindt bases these observations on more than 35 years of experience as a engineer, which specifically includes serving as an owner's representative and the sequencing of work of contractors. Under this Courts ruling in Hudgens v. Durrence, 2008 U.S. Dist. LEXIS 110142 (S.D.

Ga. Dec. 29, 2008), Rindt's application of that experience to the facts that he has reviewed regarding work it performed creates a sufficient reliability for his opinion to be admitted. Moreover, his knowledge of industry practices on the sequencing of work is helpful to the jury because  See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009);  United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007).

In effort to exclude Rindt, Defendants focus exclusively on Rindt's analysis of the amount Duncan has claimed in costs for demobilization/remobilization.  Rindt's opinion is that such costs are reasonable based on his experience.  (Rindt Dep. pp. 102-103/ Ex. F hereto).  Under Hudgens v. Durrence, 2008 U.S. Dist. LEXIS 110142 (S.D. Ga. Dec. 29, 2008), that conclusion too is sufficiently reliable to be admitted into evidence.  However, even if Rindt's review of the amount of the claim is not sufficiently reliable, Rindt's opinion based on his experience with contractor sequencing and his review of Duncan's work at the Project is sufficiently reliable for his testimony to be admissible on the overall legitimacy of this claim.

### 10.    Rindt's Opinion regarding the Additional Bond Cost Is Admissible

Rindt will offer the following opinion at trial:  "Increases in bond costs due to increases in the contract amount for unanticipated conditions and increases in the scope of the work should be reimbursable."  (Rindt Dep. Ex. 43/Ex. E hereto  This opinion is based on Rindt's 35 years of experience in the utility contracting business and his review of the documents in this case.  (Id). Such experience and knowledge of the industry creates enough indicia of reliability that same should be admitted pursuant to FRE 702. See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009); United States v. Douglas, 489 F.3d 1117, 1125 (11th Cir. 2007); Hudgens v. Durrence, 2008 U.S. Dist. LEXIS 110142 (S.D. Ga. Dec. 29, 2008);

## IV.   **CONCLUSION**

Under the <u>Daubert</u> line of cases, this Court acts as the gatekeeper in determining the admissibility of expert opinion.  To obtain the exclusion of evidence under their motion in limine, Defendants had to prove that the evidence is clearly inadmissible on all potential grounds.  Here, Mr. Rindt's opinions should not be excluded because (1) Rindt is qualified and competent to testify regarding the matters set forth in his report; (2)  the methodology by which Rindt reaches his conclusions is reliable; and (3) the proposed testimony will assist the trier of fact to better understand the issues in this case.  For the foregoing reasons, this Court should not exclude Rindt from testifying in this matter.

Respectfully submitted this <u>13</u>th day of June, 2012.

HALL, BOOTH, SMITH & SLOVER, P.C.


/s/ *Joel L. McKie*
James H. Fisher, II
Georgia Bar No. 261850
Denise W. Spitalnick
Georgia Bar No. 746210
Joel L. McKie
Georgia Bar No. 585780
*Attorneys for Plaintiff*

191 Peachtree Street, NE
Suite 2900
Atlanta, GA 30303-1740
(404) 954-5000
(404) 954-5020 (facsimile)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA,                  )
for the use and benefit of       DUNCAN    )
PIPELINE, INC., a Georgia corporation, and )
DUNCAN PIPELINE, INC.,                     )
                                           )  CIVIL ACTION
                      Plaintiffs,          )  FILE NO. 4:11-CV-00092-WTM-GRS
                                           )
                                           )
          vs.                              )
                                           )
WALBRIDGE ALDINGER                         )
COMPANY, a Michigan corporation;           )
TRAVELERS CASUALTY AND SURETY              )
COMPANY OF AMERICA; a Connecticut          )
corporation; and LIBERTY MUTUAL            )
INSURANCE COMPANY, a Massachusetts         )
corporation,                               )
                                           )
                      Defendants.          )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion in Limine to Exclude Expert Testimony* has hereby been filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Eric L. Nelson, Esq.
Joseph C. Staak, Esq.
Smith, Currie & Hancock, LLP
2700 Marquis One Tower
245 Peachtree Center Ave.
Atlanta, GA 30303-1227

**[SIGNATURE TO FOLLOW]**

This 13th day of June, 2012.

HALL BOOTH SMITH & SLOVER, P.C.

*/s/ Joel L. McKie*
Joel L. McKie, Esq.
*Attorney for Plaintiff*