IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of DUNCAN PIPELINE, INC., a Georgia corporation, and DUNCAN PIPELINE, INC., | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO. 4:11-CV-00092-WTM-GRS |
| vs. | ) | |
| WALBRIDGE ALDINGER COMPANY, a Michigan corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; a Connecticut corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSE AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

COME NOW, **United States of America, for the use and benefit of Duncan Pipeline, Inc. and Duncan Pipeline, Inc.** ("Duncan"), Plaintiffs in the above-styled civil action, and file this, Plaintiffs' Motion to Strike Defendants' Affirmative Defense showing this Court as follows:

## I. INTRODUCTION

On April 7, 2011 Duncan filed this action seeking to recover damages from Defendants for breach of contract, quantum meruit, unjust enrichment, conversion, and for Defendants' violation of the Miller Act (40 U.S.C.S. § 3133, *et. seq.*) and Prompt Payment Act (31 U.S.C.S. § 3901, *et. seq.*). (See Complaint, doc. 1, generally). Duncan also seeks to recover attorneys fees pursuant to O.C.G.A. §§ 13-6-11 and 13-11-8 and punitive damages. (See Complaint, doc. 1, ¶¶ 52-57, 67-69). Pursuant to Federal Rule of Civil Procedure 38(b), Duncan included in its complaint a demand that this action be tried to a jury. (See Complaint, doc. 1, generally).

The contract upon which Duncan's breach of contract claims are based is a subcontract agreement entered into by Duncan for work to be performed at Ft. Stewart in Hinesville, Georgia. (See Complaint, doc. 1, ¶ 10). This subcontract included a choice of law provision stating that the law of the State of Michigan should govern the contract. (See Subcontract, Article XXVII(k), attached to Complaint, doc. 1, as Exhibit "A"). The subcontract also included a provision purporting to waive the parties' right to a jury trial for an action arising out of a breach of the subcontract. (See Subcontract, Article XIX, attached to Complaint, doc. 1, as Exhibit "A").

In responding to Duncan's Complaint, Defendants' asserted that Duncan waived its right to a jury trial and that this action should be tried before the Court, without a jury. (See Answer of Walbridge Aldinger Company, doc. 17, Affirmative Defense ¶ 4; Answer of Travelers Casualty and Surety Company of America, doc. 18, ¶ 4; Answer of Liberty Mutual Insurance Company, doc. 19, Affirmative Defense, ¶ 4). However, as demonstrated below, the provision upon which Defendants' defense is premised is unenforceable. Therefore, in order to timely and efficiently prepare this action prior to trial, Duncan requests that this Court strike Defendants' Affirmative Defense alleging that Duncan waived its right to a jury trial.

## II. <u>ARGUMENT AND CITATION TO AUTHORITY</u>

The determinative issue is whether the pre-litigation jury waiver contained in the subcontract is enforceable. Because Georgia substantive law governs the enforceability of this provision, and because Georgia substantive law clearly holds that pre-litigation jury waivers are not enforceable, the pre-litigation jury waiver contained in the subcontract is unenforceable and Duncan is entitled to have this matter tried by a jury.

**A. The Substantive Law of Georgia Applies to this Action**

When an action is brought under both federal question and diversity of citizenship jurisdiction and involves issues of a choice of law provision in a contract, the district court should look to the substantive law of the forum state for interpretation of the choice of law provision. See Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am., 726 F. Supp. 2d 595, 600 (E.D. Va. 2010) citing Totalplan Corp. of Am. v. Colborne, 14 F.3d 824, 832 (2nd Cir. 1994) and Stud v. Trans Intern. Airlines, 727 F.2d 880, 881 (9th Cir. 1984). The Eleventh Circuit has held that choice of law provisions are to be construed narrowly, and in determining whether a given choice of law provision is applicable, the district court should turn to the rules of the forum state. Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F.3d 1292, 1301 (11th Cir. 2003). For example, in Green Leaf, the plaintiff brought state law claims as well as federal question claims for violations of 18 U.S.C. § 1961, *et seq*. Id. at 1296. The issue arose as to whether a contractual choice of law provision would apply to some of the plaintiff's claims. Id. at 1298. The court held that the laws of the forum state would determine the applicability of the choice of law provision. Id. at 1301; see also Mazzoni Farms v. E.I. Dupont De Nemours & Co., 166 F.3d 1162, 1165 (11th Cir. 1999) (certifying question of applicability of choice of law provision to forum state for determination).

The subcontract at issue in the case at bar contains a choice of law provision stating that Michigan law should apply to any action arising from the subcontract. (See Subcontract, Article XXVII(k), attached to Complaint, doc. 1, as Exhibit "A"). Under the reasoning of the Eleventh Circuit in Green Leaf and Mazzoni as applied to the case at bar, the applicability, extent, and effect of the provision of the subcontract purporting to apply Michigan law for any conflicts is determined by examining the law of the forum state, i.e. Georgia. See Green Leaf Nursery 341 F.3d at 1301; Mazzoni Farms, 166 F.3d at 1165. Therefore, Georgia law must be examined to determine the applicability, extent, and effect of the choice of law provision of the subcontract.

### B. Georgia Law Will Only Enforce a Choice of Law Provision *If* the Provision Does Not Contravene the Policies of Georgia

The subcontract entered into between Duncan and Defendants was executed in Georgia for work to be performed in Georgia. (See Complaint, doc. 1, ¶ 10). In interpreting contracts entered into in Georgia and performed in Georgia, "Georgia adheres to the traditional choice-of-law rules for contract *lex loci contractus*." McGow v. McCurry, 412 F.3d 1207, 1217 (11th Cir. 2005) citing Convergys Corp. v. Keener, 276 Ga. 808, 812 (2003). *Lex loci contractus* provides that the "validity, nature, construction, and interpretation of a contract are governed by the law of the state where the contract was made, except that where the contract is made in one

state and is to be performed in another state, the substantive law of the state where the contract is to be performed will apply." Id. citing Fed. Ins. Co. v. Nat'l Distrib. Co., 203 Ga. App. 763, 765 (1992). It is axiomatic that "Georgia will not apply the law of another state if the other state's law contravenes Georgia's public policy." Id. (internal citations omitted).

Georgia law holds that, in certain circumstances, contractual choice of law provisions are enforceable. Rayle Tech, Inc. v. DeKalb Swine Breereds, 133 F.3d 1405, 1409 (11th Cir. 1998) ("Although Georgia courts adhere to the rule of *lex loci contractus*, parties may stipulate that the laws of another jurisdiction will govern the transaction, unless the law is contrary to Georgia public policy." (internal citations omitted)). However, Georgia law holds that where the enforcement of a choice of law provision would lead to results that are contrary to public policy or that are prejudicial to the interests of Georgia, that choice of law provision is unenforceable. Convergys Corp. v. Keener, 276 Ga. 808, 810 (2003). In regards to choice of law provisions, "[i]n clear and precise language, the Supreme Court of Georgia stated the following: . . . .'*The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of the state.*'" Marketing &

Research Counselors, Inc. v. Booth, 601 F. Supp. 615, 616 (N.D. Ga. 1985) citing Nasco, Inc. v Gimbert, 239 GA. 675, 676 (1977) (emphasis in the original); see also Hostetler v. Answerthink, Inc., 267 Ga. App. 325, 328 (2004). "Georgia conflicts of law will not follow a contractual selection of law of a foreign state where such chosen law would contravene the public policy of Georgia . . . ." Hulcer v. Servs. v. R. J. Corman R.R. Co. L.L.C., 247 Ga. App. 486, 489 (2000) (holding that Texas law, as called for by a choice of law provision, would not apply when application of Texas law would "flagrantly contravene[] the public policy of Georgia . . . .").

As explained in Keener, the principle that Georgia substantive law does not permit the enforcement of laws from other states that are contrary to the policy or prejudicial to the interests of Georgia is codified in O.C.G.A. § 1-3-9, which states "The courts shall enforce [the comity of states], unless restrained by the General Assembly, *so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state*." Id.; O.C.G.A. § 1-3-9 (emphasis supplied). Georgia courts have consistently refused to enforce contract law of other states where the enforcement of another state's law would violate Georgia's public policies. Id. at 810-11 citing Ulman & Woolen Co. v. Magill, 155 GA. 555 (1923) (Georgia law would not enforce Missouri contract that violated Georgia's prohibition against a

contract of suretyship on the part of a wife in behalf of her husband); Hulcher Servs., *supra*; Federal Ins. Co. v. National Distributing Co., 203 Ga. App. 763 (1992); Enron Capital v. Pokalsky, 227 Ga. App. 727 (1997); Merrill Lynce, Pierce, Fenner & Smith v. Stidham, 658 F.2d 1098, 110 n. 5 (5th Cir. 1981); Barnes Group v. Harper, 653 F.2d 175, 178 n. 4 (5th Cir. 1981); Marketing and Research Counselors v. Booth, 601 F. Supp. 615 (1985).

Under these principles of law, even if the choice of law provision in the subcontract is found to be generally enforceable, it will not be enforced if application of Michigan law would violate Georgia's public policy. Compare Nasco, Inc., *supra*. (holding that choice of law provision calling for the application of Tennessee law was unenforceable because the terms of the contract were contrary to Georgia's public policy). As demonstrated below, the terms of the contract purporting to waive the parties' right to a jury trial is clearly against Georgia public policy. Defendants cannot use the contract's choice of law provision to escape the applicability of Georgia law when enforcement of the provision would be in direct contravention to Georgia law and against the public policy and interests of the State.

### C. Waiver of Jury Trials Is Against Georgia Public Policy

As noted above, the contract upon which Duncan's breach of contract claims are based contains a provision purporting to waive the parties' right to a jury trial. (See Subcontract, Article XIX, attached to Complaint, doc. 1, as Exhibit "A"). However, Georgia law is clear that this provision is not enforceable: "[P]re-litigation contractual waivers of jury trial are not provided for by [the Georgia] Constitution or Code and are not to be enforced in cases tried under the laws of Georgia." Bank S., N.A. v. Howard, 264 Ga. 339, 340 (1994); see also GE Commer. Fin. Bus. Prop. Corp. v. Heard, 621 F. Supp. 2d 1305, 1308 (M.D. Ga. 2009). Justice Sears of the Georgia Supreme Court explained the holding of Bank South as follows:

> In [Bank South], we construed Art. I, Sec. I, Para. XI of our Constitution, which provides, in relevant part, that the "right to trial by jury shall remain inviolate, except that the court shall render judgment without the verdict of a jury in all civil cases where no issuable defense is filed and where a jury is not demanded in writing by either party." We held that pre-litigation waivers of the right to trial by jury violated public policy because the applicable statutory and constitutional provisions "contemplate the pendency of litigation at the time of the waiver;" because of the "magnitude of the rights involved;" and because of the "probability of abuse."

Allen v. Thomas, 265 Ga. 518, 522 (1995) (Sears, Justice, dissenting) citing Bank South, 264 Ga. at 340.

GE Commercial, *supra*, is instructive in regards to the enforceability of a pre-litigation contractual waiver of jury trial in a federal court applying Georgia law. In GE Commercial, the plaintiff brought suit on contracts entered into with three auto dealerships: one was located in Florida, the other two in Georgia. GE Commercial, 621 F. Supp. 2d at 1306. The defendants answered and specifically demanded a jury trial. Id. at 1307. The plaintiff argued that the defendants had contractually waived their right to a jury trial in the contracts. Id. The defendants responded, arguing that Georgia law, which prohibits pre-litigation contractual jury waivers, "nullifies any such waivers in the contracts governed by Georgia law." Id.

The district court agreed with the defendants, reasoning that Georgia law clearly holds that pre-litigation contractual jury trial waivers are unenforceable. Id. at 1308 citing Bank South, 264 Ga. at 340. The district court also rejected the plaintiff's contentions that the right to a jury trial is determined as a matter of federal law in diversity as well as other actions. Id. The court reasoned that, the principle that the right to a jury trial is decided as a question of federal law "does not mean, however, that the 'general federal law' (whatever that may be) *mandates* that all contractual waivers entered into knowingly and voluntarily shall always be enforced in actions filed in federal court." GE Commercial, 621 F. Supp. 2d at 1309 (emphasis in the original). Accepting the plaintiff's argument "would require

the court to ignore a sovereign state's determination as to how contracts should be interpreted even though there is no federal interest implicated in the action other than the *expansion* of the right to a jury trial and the fact that the action found its way into a federal court because the parties happen to be from different states." Id. (emphasis in the original). Instead, states are free to extend more sweeping constitutional guarantees, and "a state may therefore determine as a matter of state law that certain constitutional rights are simply not waivable, just as Georgia has done here." Id. (internal citations omitted).

In short, and as recognized by the GE Commercial court, "[t]his important right under Georgia law cannot be forfeited simply because a citizen is sued in federal court when the enforcement of this right is not contrary to the U.S. Constitution." Id. Defendants now attempt to circumvent established Georgia law and enforce a contractual provision that is clearly against Georgia policy. Such attempt is to be rejected. Consequently, the pre-litigation jury waiver provision of the subcontract is clearly unenforceable, and Duncan is entitled to have this matter tried before a jury.[1]

[1] Even if a jury trial is inappropriate for the contractual claims, Duncan is entitled to a jury trial on its tort and punitive damage claims against Defendants. Therefore, it is in the interest of judicial economy to allow the whole trial be to a jury.

### D. Even Assuming Georgia Substantive Law Were Not to Apply, The Jury Waiver Provision of the Contract is Still Unenforceable

Should this Court find that the reasoning and holding of GE Commercial are not applicable to the case at bar, "general federal law" would not hold that the jury waiver provision of the subcontract is enforceable either. Compare GE Commercial, 621 F. Supp. 2d at 1309. In determining the enforceability of pre-litigation jury waivers, the presumption is that the waiver *should not* be enforced. See Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 394 (1937) ("as the right of jury trial is fundamental, courts indulge *every reasonable presumption against waiver*." (emphasis supplied)); see also Burke Grain Co. v. St. Paul-Mercury Indem. Co., 94 F.2d 458 (8th Cir. 1938) (noting that the right of jury trial is fundamental, and courts indulge every reasonable presumption against waiver).

While it remains unsettled in the Eleventh Circuit as to who has the ultimate burden of showing that a waiver is enforceable, the Eleventh Circuit has noted that it is proper for district court to place the burden of proving enforceability of a pre-litigation jury trial waiver upon the party seeking the benefit of the waiver. See Backrac, Inc. v. Villager Franchise Sys., 164 Fed. Appx. 820, 824 n.1 (2006); see also, Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835 (1988) *cert. denied* 490 U.S. 1021 (1989).

The Eleventh Circuit[2] has held a provision of a contract purporting to waive a jury trial may be enforceable "so long as the waiver is knowing and voluntary." Bakrac, 164 Fed. Appx. at 823.[3] To determine whether a waiver is "knowing and voluntary", the Eleventh Circuit has provided four factors for courts to consider: (1) the conspicuousness of the waiver provision; (2) the parties' relative bargaining power; (3) the sophistication of the party challenging the waiver; and (4) whether the terms of the contract were negotiable. Bakrac, 164 Fed. Appx. at 823-24 citing Leasing Service Corp. v. Crane, 804 F.2d 828, 833 (4th Cir. 1986) and Whirlpool Fin. Corp. v. Sevaux, 866 F. Supp. 1102 (N.D. Ill. 1994).

In this action, the sum of these factors favor a finding that the jury waiver provision of the subcontract is unenforceable as the waiver was not knowingly and voluntarily entered. First, the provision of the contract purporting to waive Duncan's right to a jury trial was not conspicuous. (See Subcontract, Article XIX, attached to Complaint, doc. 1, as Exhibit "A"). The waiver language is buried in the nineteenth article on page six of a thirty-one page contract. (See Subcontract,

---

[2] Similarly, Michigan state law holds that a waiver must be "intentional and voluntary relinquishment of a known right." See e.g. Barclae v. Zarb, 2011 Mich. App. LEXIS 96, *4 (Mich. Ct. App. 2011).

[3] It is important to note that Bakrac arose from the Southern District of Florida and involved a contract containing a New Jersey choice of law provision. Georgia's express prohibition against pre-litigation jury waivers was not addressed nor was the issue considered in Bakrac as Florida law does permit pre-litigation jury waivers. See Bakrac, 164 F. Appx. at 823-24.

Article XIX, attached to Complaint, doc. 1, as Exhibit "A"). When a contractual provision, such as the one at issue, is "literally buried" in a length contract, it is not so conspicuous that a party will be deemed to have knowingly and voluntarily agreed to it. See National Equipment Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2nd Cir. 1977) (finding jury waiver provision located in the eleventh paragraph of a sixteen clause agreement was not conspicuous); see also Dreiling v. Peugeot Motors of America, Inc., 539 F. Supp. 402, 403 (D. Colo. 1982) ("A constitutional guarantee so fundamental as the right to a jury trial cannot be waived unknowingly by mere insertion of a waiver provision on the twentieth page of a twenty-two page standardized form contract."), *overruled on other grounds by* Dreiling v. Peugeot Motors of America, Inc., 850 F.2d 1373 (10th Cir. 1988).

Moreover, Duncan did not have equal bargaining power as Defendant Walbridge Aldinger when entering the subcontract. Duncan submitted a bid for the project, and the acceptance of the bid was either "take it or leave it" from Defendant Walbridge Aldinger Company. Specifically, Jason Klingensmith, Walbridge's estimator for Duncan's Subcontract, testified that the "Terms and conditions is [sic] set." (Klingensmith Dep. p. 69/Excerpts attached as Ex. A). Dawn Duncan testified that when she received the Subcontract from Klingensmith she was not given an opportunity to negotiate regarding the terms of the

Subcontract. (D. Duncan Aff. ¶¶ 4-6/Ex. B hereto). Dawn Duncan did not read the provision related to the waiver of a jury trial prior to executing the Subcontract. (D. Duncan Aff. ¶ 7/Ex. B hereto). Under these circumstances, it cannot be said that Duncan had the equal bargaining power requisite to knowingly and voluntarily waive its right to a jury trial. See e.g., Hough v. Regions Fin. Corp., 672 F.3d 1224, 1229 (2012) (noting that "take-it-or-leave-it" contract can create an inequality of bargaining power). Similarly, the "take it or leave it" nature of the terms of the subcontract presented by Defendant Walbridge Aldinger Company renders the terms of the subcontract non-negotiable to the extent that it cannot be said that Duncan knowingly and voluntarily agreed to waive its right to a jury trial. These factors, taken in sum, lead to the conclusion that Duncan did not knowingly and voluntarily waive its right to a jury trial.

## III. CONCLUSION

Duncan has brought this action and demanded that it be tried by a jury. Defendants have raised the defense that Duncan waived the right to a jury trial. However, the law in this matter is well settled: Because this action arises in diversity and federal question jurisdiction, the substantive law of the forum state, Georgia, governs the enforceability of the contract provisions at issue. Georgia law clearly holds that waiver of jury trial is not permitted. Consequently, Defendants'

affirmative defense of waiver of jury trial should be struck, and this matter should proceed to a trial before a jury.

Respectfully submitted this 29th day of July, 2012.

HALL, BOOTH, SMITH & SLOVER, P.C.

***/s/ Joel L. McKie***
James H. Fisher, II
Georgia Bar No. 261850
Denise W. Spitalnick
Georgia Bar No. 746210
Joel L. McKie
Georgia Bar No. 585780
*Attorneys for Plaintiff*

191 Peachtree Street, NE
Suite 2900
Atlanta, GA 30303-1740
(404) 954-5000
(404) 954-5020 (facsimile)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of DUNCAN PIPELINE, INC., a Georgia corporation, and DUNCAN PIPELINE, INC., | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO. 4:11-CV-00092-WTM-GRS |
| vs. | ) | |
| WALBRIDGE ALDINGER COMPANY, a Michigan corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; a Connecticut corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of **Plaintiffs' Motion to Strike Defendants' Affirmative Defense and Memorandum of Law in Support Thereof** has hereby been filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Eric L. Nelson, Esq.
Joseph C. Staak, Esq.
Smith, Currie & Hancock, LLP

2700 Marquis One Tower
245 Peachtree Center Ave.
Atlanta, GA 30303-1227

This 29th day of June, 2012.

HALL BOOTH SMITH & SLOVER, P.C.

***/s/ Joel L. McKie***
Joel L. McKie, Esq.
*Attorney for Plaintiff*