IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA For the Use and Benefit of DUNCAN PIPELINE, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALBRIDGE ALDINGER COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION FILE <br><br> NO.   4:11-cv-00092-WTM-GRS |

**Defendants' Reply to Plaintiffs' Response
to Defendants' Motion for Summary Judgment**

Defendants Walbridge Aldinger Company, Travelers Casualty and Surety Company of America and Liberty Mutual Insurance Company submit this Reply Brief in Response to Duncan Pipeline, Inc.'s Memorandum in Opposition to Defendants' Motion for Summary Judgment.

**I.   Summary of Argument**

- Duncan's argument that state lien law somehow abrogates the multiple waivers it signed completely misses the mark; this federal project is controlled by the Miller Act, which preempts state law. Lien law has nothing to do with this case. Duncan does not deny that it signed the waivers of claims with full knowledge of what they say in order to induce payment from Walbridge.

- The Federal Acquisition Regulations' (FAR) provision cited by Duncan does not change two simple controlling facts: (1) the subcontract expressly required that Duncan provide written notice to Walbridge within 14 days of the change for which it is claiming

1

- additional compensation; and (2) Duncan did not give the required written notice within the 14-day period.

- Duncan offers no legal basis for invalidating its express contractual release of claims for loss of production and inefficiency.

- Unable to support its conversion claim, Duncan attempts to convert it to a claim of trespass, which is untimely and prevented under its subcontract with Walbridge.

- Duncan offers no legal basis for a private cause of action under the Prompt Pay Act.

**II.     Argument and Citation of Authorities**

    **A.     Contrary to Duncan's Arguments, this Dispute does not involve Lien Law**

The cases relied on by Duncan relate to waivers of liens and lien rights. But, this dispute does not involve liens or lien laws. Further, state lien rights have no bearing on a federal project because federal construction projects are governed by federal procedural and substantive laws – i.e. the Miller Act. *See F.D. Rich Co., Inc. v. Indus. Lumber Co., Inc.*, 417 U.S. 116, 127 (1974) (stating that "[t]he Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law."); *Mississippi Road Supply Co. v. H.R. Morgan, Inc.*, 542 F.2d 262, 265 (5th Cir. 1976) ("on federal projects…state lien rights are not available….It is axiomatic that state law liens may not be asserted against federally owned lands or buildings.") (citations omitted); *Roc Carter Co., LLC v. Freedom Demolition, Inc.*, 5:09-cv-101, 2009 WL 3418196, at *3 (M.D. Ga. Oct. 14, 2009) ("[s]tate law liens may not be asserted against federally owned lands or buildings."); *General Elec. Supply Co. v. Minority Electric Co.*, 537 F. Supp. 1018, 1019 (S.D. Ga. 1982) ("the remedies available in a Miller Act case are determined by federal law.").

Put differently, the Miller Act preempts state lien laws. *Tacon Mechanical Contractors,*

*Inc. v. Aetna Cas. & Sur. Co.*, 860 F.Supp. 385 (S.D. Tex. 1994), *aff'd* 65 F.3d 486 (5th Cir. 1995); *Brown Bros. Grading Co. v. F.D. Rich Co.*, 285 F. Supp. 572, 576 (D.S.C. 1968) ("the Miller Act does preempt remedies under state laws or lien statutes where a United States Government contract involves claims for workmanship and materials furnished."). Accordingly, Georgia's and Michigan's lien requirements, and the associated lien waiver requirements, are irrelevant because this dispute involves a federal project and the Miller Act. Indeed, Duncan has not even asserted a lien claim or right.

The Miller Act permits a party to waive its payment bond claim where the waiver is "(1) in writing, (2) signed by the person whose right is waived, and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c). Here, the Partial Unconditional Waivers that Walbridge is seeking to enforce meet all three requirements. [Ward Dep. Ex. 11/Ex. A hereto]. Each waiver is in writing, signed by either Ward or Dawn Duncan, and was issued after Duncan furnished the labor or materials in question. Duncan does not challenge any of these elements.

The waivers that Duncan signed release three distinct types of claims: (1) lien rights, (2) rights against payment bonds, and (3) claims arising from improvements for labor/materials provided. [Ward Dep. Ex. 11/Ex. A hereto]. In addition, each waiver specifically states that "[t]his waiver, together with all previous waivers, if any, does cover all amounts due to me/us for the contract improvements provided through the date as above." [*Id.*]. Thus, by their own language, each waiver releases all amounts due for contract improvements through the date of the waiver. But, despite the simple language of the waivers, Duncan attempts to muddle their meaning by relying on an irrelevant lien waiver case. *See Interior/Exterior Specialist Co. v. Devon Indus. Group, LLC*, No. 276620, 2009 WL 49616 (Mich. Ct. App. Jan. 8, 2009). Setting

aside Michigan lien law's irrelevance in determining the validity of releases and waivers under the Miller Act, Duncan's reliance on *Interior/Exterior* is still misplaced.

As Duncan states in its Memorandum in Opposition, *Interior/Exterior* involved a similarly worded waiver provision. *Id.* at *4. And, while the waiver is similar to the Waivers Duncan signed, Duncan overlooks that the waivers in *Interior/Exterior* were specifically designated as lien waivers; each waiver was titled "Partial Unconditional Waiver of **Lien**." *Id.* at *4 (emphasis added). The court, relying on the doctrine that "contracts must be construed so as to give effect to every word or phrase as far as practicable" found that, by including "Lien" in the title, the parties intended it to only address lien claims. *Id.* Accordingly, because of the waivers' titles, the phrase "claims arising from the improvement [could] reasonably be viewed as only addressing construction lien claims. *Id.* The determining factor was that the title expressly limited the waiver to liens. *Id.* at *4-5.

The waivers Duncan signed are broader and nothing in the waivers' title or language limit them to lien rights. [Ward Dep. Ex. 11/Ex. A hereto]. Rather, the waivers release three distinct types of claims: (1) lien claims, (2) rights against payment bonds, and (3) claims arising from the improvement. [Ward Dep. Ex. 11/Ex. A hereto]. *Interior/Exterior* is inapposite and this Court should enforce the Waivers' plain language and find that Duncan waived all claims for payment that arose before April 20, 2010.

Duncan further argues that it did not waive its Miller Act rights because they did not ripen until Duncan was not paid in full within 90 days after the day Duncan last did or performed labor or supplied materials. [Duncan Memorandum in Opposition p. 11]. The 90-day provision in the Miller Act to which Duncan refers has nothing to do with Duncan's waiver of its claims; rather, this provision relates to the notice obligations that Duncan had with respect to making a

4

timely claim on Walbridge's payment bond under the Miller Act. The Miller Act does not require a party to wait 90 days from last providing labor or materials before signing a waiver or asserting a claim against its contractor for additional compensation. *See* 40 U.S.C. § 3133(c). Instead, the Miller Act only requires the waiver to be executed after the "person whose right is waived has furnished labor or materials for use in the performance of the contract." *Id.* In fact, the Miller Act contemplates that interim waivers will be signed by allowing waivers during "the performance of the contract." 40 U.S.C. § 3133(c)(3). Duncan does not allege that it did not perform the work prior to executing the waiver; rather it only states that it completed a small portion of the work after signing the waiver. But, Walbridge's Motion for Summary Judgment only goes to work performed prior to Duncan's execution of the waiver. Accordingly, Duncan waived its right to payments for all costs incurred prior to April 20, 2012.

### B. Duncan Waived its Claims by Failing to Provide Timely Notice

The subcontract required Duncan to provide written notice of any changes within 14-days of the event giving rise to the change. Duncan does not contest that it failed to comply with this contractual requirement. By failing to comply with the notice provision, Duncan waived its right to later assert additional claims. Duncan's only argument is based on an effort to create an ambiguity where one does not exist. Specifically, Duncan points to FAR 52.243-4 as the basis for stating that written notice of a change is not mandatory. That provision, however, does not limit or excuse Duncan's obligations to provide notice within the 14-day contractual period.[1]

Similarly, Duncan's contention that Walbridge waived the notice requirements overlooks

---

[1] Duncan's other argument, i.e., that Walbridge breached an "implied warranty" of the specifications, has nothing to do with whether or not Duncan complied with the subcontract's notice requirements.

the express language of the subcontract's anti-waiver provision. [Ward Dep. Ex. 1 – Article XXVII/Ex. B hereto].[2] The anti-waiver provisions states that "[n]o waiver by Contractor of any breach by Subcontractor of a provision of this Subcontract shall be deemed a waiver of any other provision hereof or of any subsequent breach by Subcontractor of such provision." [*Id.*]. The Michigan Supreme Court granted summary judgment based on a similar anti-waiver provision. *See Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362 (2003). While anti-waiver provisions can be waived, the party challenging the anti-waiver provision must establish with "clear and convincing evidence" that the parties mutually assented to modify or waive the contract as a matter of law. *Id.* The party challenging the anti-waiver provision bears this burden, even if they are the non-moving party on a motion for summary judgment. *Id.* at 379-80.

Duncan fails to present clear and convincing evidence that Walbridge and Duncan mutually assented to modify or waive the contract as a matter of law. Accordingly, Duncan fails to meet the burden of proof necessary to waive an anti-waiver clause.

    C.    **Duncan's Claims for Excessive Excavation and Mobilization/Demobilization are Barred by the Subcontract**

Duncan's claims are barred by the subcontract: "Subcontractor shall not be entitled to receive any amount for overhead or profit or for any inefficiencies or loss of productivity and shall not assert any claim for overhead or profit or damages due to loss of productivity or inefficiencies." [Ward Dep. Ex. 1 – Article V/Ex. B hereto]. Duncan once again seeks to avoid the subcontract's plain terms by arguing, without citing any relevant law, that the exculpatory provision is not valid. The case law cited by Duncan's discusses the exceptions to enforcing

---

[2] Only the relevant portions of the subcontract are attached.

6

"no-damage-for-delay" clauses in construction contracts. This, however, is not a delay case. Duncan does not provide any cases that impose limitations on exculpatory clauses for loss of productivity or inefficiency. As Duncan has not asserted any claims for delays, Duncan's cases are inapplicable.

Duncan's claim that the subcontract waiver is barred by Georgia lien law also lacks merit because Duncan has not asserted any lien and, as discussed previously state lien law has no effect on federal projects and is preempted by the Miller Act.

### D. Duncan Failed to Allege any Facts Supporting Its Conversion Claim

Duncan failed to provide any reasonable basis for its conversion claim. In fact, in its response, Duncan fails to provide *any* evidence of conversion. Instead, Duncan alleges a new cause of action, i.e., a trespass claim under O.C.G.A. § 51-10-3. This claim has never been pled and the Court should not allow Duncan to assert a new claim at this stage of litigation. *See Maynard v. Board of Regents of Div. of University of Florida Dept. of Education*, 342 F.3d 1281, 1286-87 (11th Cir. 2003) (denying amendment where it was sought on the last day of discovery). A court may deny amendments for a number of reasons, including "undue delay, undue prejudice to the defendants, and futility of the amendment." *Id.; see also, Kendall v. Thaxton Road LLC*, 443 Fed. Appx. 388, 393 (11th Cir. 2011) (upholding denial of motion to amend made two months after scheduling order).

It appears that Duncan abandoned its conversion claim when it could not garner any evidence to support it. It now wants to change its horse in midstream, after more than a year of discovery and after it took ten depositions around the country. Defendants would be unduly prejudiced if this Court allowed Duncan to amend its complaint to assert a claim for trespass as discovery is complete and Walbridge has had no opportunity to perform any discovery with

respect to this claim. Further, Duncan has not provided any reason for its late assertion of the trespass claim, nor has it asserted any valid facts supporting the claim.

Equally important is that Duncan cannot assert a trespass claim because such a claim is runs contrary to the subcontract. Duncan's trespass allegations are that Walbridge used Duncan's equipment without the authorization to do so. But, Article XIV, Section (iii) of the Subcontract states that Walbridge could, upon notice of default to Duncan, take possession of "all materials, equipment, facilities, tools, scaffolds and appliances of [Duncan] relating to the work for the purposes of completing the Work…" [Ward. Dep. Ex. 1/Ex. A hereto]. Here, Walbridge notified Duncan of its default. [Walker Dep. 49:7-16/Ex. C hereto]. No grounds for a trespass claim can exist because the subcontract grants Walbridge the right to use the equipment in the event of a notice of default to Duncan.

E.   **The Prompt Payment Act does not allow for a Private Right of Action**

The Prompt Payment Act does not create a private right of action. *See IES Commercial, Inc. v. Cont'l Ins. Co.*, 814 F. Supp. 2d 1, 2-3 (D.D.C. 2011) (citations omitted). Duncan's reliance on two cases for the proposition that a private right of action exists is misplaced. Neither case holds that a private right of action exists under the Prompt Payment Act. *See Liquidating Tr. Ester Duval of Ki Liquidation, Inc. v. United States*, 89 Fed. Cl. 29, 40 (Fed. Cl. 2009) (discussing prompt payment act as a basis for governmental action under the False Claims Act); *Maris Equip. Co., Inc. v. Morganti, Inc.*, 163 F. Supp. 2d 174, 197 (E.D.N.Y. 2001) (stating that there is no private right of action under the Prompt Payment Act). In fact, *Maris* expressly recognized that no court has found that the Prompt Payment Act creates a private right of action. Accordingly, it is irrelevant whether Walbridge violated 48 CFR 52.232-27 or the Prompt Payment Act because neither creates a private right of action.

Furthermore, setting aside that no private right of action exists under the Prompt Payment Act, Duncan has not presented evidence that Walbridge failed to pay Duncan any money paid to Walbridge for Duncan's work.

Respectfully submitted this 11th day of July, 2012.

SMITH, CURRIE & HANCOCK LLP

/s/ Eric L. Nelson
Eric L. Nelson
Georgia Bar No. 537850 [Admitted Pro Hac Vice]
Joseph C. Staak
Georgia Bar No. 673712
2700 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303-1227
Telephone:  (404) 521-3800
Facsimile:  (404) 688-0671
***Attorneys for Defendants Walbridge Aldinger Company, Travelers Casualty and Surety Company of America and Liberty Mutual Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that **Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment** has been filed and served electronically on July 11, 2012, using the CM/ECF system, which will automatically provide copies to all Counsel of Record:

> Joel L. McKie, Esq.
> James H. Fisher, II, Esq.
> Denise Spitalnick, Esq.
> Hall, Booth, Smith & Slover, PC
> 191 Peachtree Street, NE
> Suite 2900
> Atlanta, GA  30303-1740
>
> Michael G. Frick, Esq.
> Hall, Booth, Smith & Slover, PC
> 3528 Darien Highway
> Suite 300
> Brunswick, GA  31525

This 11th day of July, 2012.

> /s/ Eric L. Nelson
> Eric L. Nelson