IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of DUNCAN PIPELINE, INC., a Georgia corporation, and DUNCAN PIPELINE, INC., <br><br>             Plaintiffs, <br><br>    vs. <br><br> WALBRIDGE ALDINGER COMPANY, a Michigan corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; a Connecticut corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, <br><br>             Defendants. | CIVIL ACTION <br> FILE NO. 4:11-CV-00092-WTM-GRS |

## PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW, United States of America, for the use and benefit of Duncan Pipeline, Inc. and Duncan Pipeline, Inc. (collectively "DPI"), Plaintiffs in the above-styled civil action, and file this Plaintiffs' Sur-reply Brief in Opposition to Defendants' Motion for Partial Summary Judgment, showing this Court as follows:

In their reply brief, Defendants have purposely attempted to confuse the relevant law and material factual issues. Since Defendants failed to meaningfully respond to many of DPI's earlier arguments, DPI only addresses herein those limited issues that require additional explanation, specifically the effect of the Michigan form waivers, DPI's compliance with the subcontract's notice requirements, and the adequacy of DPI's pleading regarding Walbridge's tortuous use of DPI's property.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. Michigan Form Waivers Unenforceable In Their Entirety

Defendants attempt to confuse the Court regarding the meaning and purpose of the Michigan form waivers that Walbridge required DPI to sign. The material issue is not whether DPI had state lien rights; <u>the issue is what rights, if any, did DPI relinquish when it signed the subject waivers</u>. Defendants' arguments explicitly highlight that the subject form waivers were unclear and ambiguous such that DPI could not have knowingly and voluntarily relinquished its rights to the additional compensation that is being sought in this lawsuit by signing these forms. Therefore, summary judgment is inappropriate.

#### 1. *State Law Claims Exist Separate from Miller Act*

To clarify an area of Miller Act law that was undoubtedly purposefully muddled in Defendants' reply brief, DPI's claims for additional compensation exist separate and independent from its Miller Act claim since such claims are based on the parties' subcontract and under common law or equitable principles. <u>Consolidated Elec. & Mechs., Inc. v. Biggs Gen. Contr., Inc.</u>, 167 F.3d 432, 435 (8th Cir. 1999) ("Claims brought under the Miller Act, however, are federal causes of action and are separate and distinct from state law breach of contract actions."); <u>United States on behalf of Sunworks Div. of Sun Collector Corp. v. Insurance Co. of North America</u>, 695 F.2d 455, 457-458 (10th Cir. 1982) ("Where neither a valid Miller Act nor mechanic's lien claim exists, other statutory or common law remedies may be available to an unpaid supplier."); <u>K-W Indus. v. National Sur. Corp.</u>, 855 F.2d 640, 643 (9th Cir. 1988) (same); <u>Fidelity & Deposit Co. v. Harris</u>, 360 F.2d 402 (9th Cir. 1966) (same); <u>United States ex rel. JBlanco Enters. v. Abba Bonding, Inc.</u>, 2009 U.S. Dist. LEXIS 22675 (D. Colo. Mar. 20, 2009) ("Miller Act preemption does not bar the plaintiff's state law claims against . . . the general

contractor."). Therefore, the Miller Act is irrelevant to determining whether DPI's state law claims have been waived by the subject waivers.[1]

The only portion of the subject Michigan form waivers that could potentially implicate waiver of DPI's state law claims is the phrase, "claims arising from the improvement." Defendants make no effort to distinguish the considerable Georgia case law cited by DPI that make clear this phrase does not amount to waiver of DPI's state law claims. See generally J.L. Williams & Co. v. West Concrete Co., 139 Ga. App. 208, 228 S.E. 2d 196 (1976); David Shapiro & Co. v. Timber Specialties, Inc., 141 Ga. App. 354, 233 S.E. 2d 439 (1977); Allgood Elec. Co. v. Martin K. Eby Constr. Co., 85 F.3d 1547 (11th Cir.1996).

Defendants attempt to distinguish Interior v. Devon Indus. Group, 2009 Mich. App. LEXIS 299 (Mich. Ct. App. Jan. 8, 2009) by noting that there the Michigan form waivers included the words "of lien" at the heading of the subject waiver. That title was only one of the factors that the Interior Court cited in finding the subject waiver irrelevant to disposition of the case. Defendants ignore the determinative factor considered by the Interior court. Citing MCLS § 570.1115, the Michigan Court of Appeals in Interior specifically found the subject document, which is nearly identical to the one here except for the words "of lien" in its heading, was "statutorily derived and only relate[d] to construction lien claims." Id. * 11-12. Additionally, Defendants completely ignore the subject waivers' explicit reference to "Owner's compliance with applicable *Construction Lien Laws*."  (emphasis added). Moreover, the Interior Court excluded the waivers as wholly irrelevant, finding as a matter of law such waivers only related to construction lien rights. Therefore, even if this Court finds Defendants' distinction of Interior

---

[1] By citing Michigan and Georgia cases in their initial moving brief, Defendants implicitly recognize the controlling impact of state law on determining whether the subject waivers amounted to a knowing and voluntary relinquishment of DPI's contractual rights.

persuasive, at the very least, the other factors relied upon by the <u>Interior</u> Court, which are also present here, create a jury question as to whether the "instant document waived only construction lien rights." <u>See generally Klapp v. United Ins. Group Agency, Inc.</u>, 468 Mich. 459, 469 (Mich. 2003).

The critical question to be answered by this Court is whether the subject waivers, specifically the phrase, "claims arising from the improvement," amounts to waiver of DPI's state law claims. Like in <u>Interior</u>, it is clear that this Michigan form waiver, which Walbridge required DPI to execute and now seeks to rely upon, was "statutorily derived and only relates to construction lien claims." In other words, as a condition precedent to progress payments pursuant to Article III of the Subcontract, Walbridge required DPI to execute waivers meant to waive DPI's Construction Lien Law rights under Michigan law.[2] These Michigan form waivers did nothing more and nothing less. Since under Georgia and Michigan law these subject waivers do not clearly evince an intent by DPI to waive the significant contractual and equitable rights that exist beyond Michigan's (or Georgia's, for that matter) lien laws, summary judgment based on these waivers must be denied.

    2.    *Cases Cited by Defendants Regarding Lien on Federal Lands Immaterial*

Defendants argue that since DPI could not place a lien on federally owned property, then Georgia and Michigan lien law is irrelevant. Once again, the issue is not whether DPI could assert a statutory lien on Ft. Stewart; it clearly could not and did not. The issue is the meaning of the subject Michigan form waivers. The subject waivers on their face, as conceded by Defendants, purport to waive lien rights – lien rights that admittedly could not exist. In other words, there is no way to give the phrase, "construction lien rights," any effectual meaning under

---

[2] Had Defendants intended for DPI to waive Georgia lien law rights, Defendants would have had DPI sign a waiver that complied with O.C.G.A. § 44-14-366(c).

the subject form waivers as applied to Ft. Stewart.  Since portions of the subject waivers are clearly ineffectual, this Court should not torture, as requested by the Defendants, the meaning of "claims arising from the improvement" to give it some meaning besides those associated with construction lien law.   See Anderson v. Southeastern Fidelity Ins. Co., 251 Ga. 556, 307 S.E.2d 499, 500 (1983) (phrase "must be gauged by the words surrounding it.")   At the very least, the ineffectual phrase, "construction lien laws," creates a jury question regarding the meaning, purpose, and effect of the subject waivers.  See United States ex rel. Cemex Constr. Materials Fla., LLC v. EPB Enters., LLC, 2012 U.S. Dist. LEXIS 32328 (M.D. Fla. Mar. 12, 2012) ("genuine issues of material fact remain as to whether [contractor's] need for 'Sworn Statement(s), lien waiver(s), guarantee(s) and other reasonably requested documents,' was related only to liability under the Miller Act, or whether there were other effectual purposes for these documents.")

      3.    *Michigan Form Waivers Did Not Waive Miller Act Rights*

Defendants ignore the considerable case law that has developed interpreting 40 U.S.C. § 3133(c), which is the federal statute that allows for the waiver of Miller Act rights. Specifically, the 11th Circuit has held that unless there is a "*clear and explicit* relinquishment of the statutory right, a [subcontractor] is entitled to pursue payment under a bond." Trane Co., Div. of American Standard, Inc. v. Whitehurst-Lassen Constr. Co., 881 F.2d 996, 1002 (11th Cir. 1989) (citations omitted) (emphasis added); See also United States ex rel. Walton Tech. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1209 (9th Cir. 2002).  The Miller Act "is highly remedial in nature . . . [and] . . . is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects. United States ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957).  There are at least

two (2) reasons why the instant Michigan form waivers are not "clear and explicit" relinquishments[3] of DPI's Miller Act Rights.

First, the Michigan form waiver executed by DPI does not even mention DPI's Miller Act rights. Several federal courts have held the failure to explicitly mention Miller Act rights in the purported release fails to meet the "clear and explicit" standard that applies to 40 U.S.C. § 3133(c). United States ex rel. Walton Tech. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1209 (9th Cir. 2002); Lee & Rua Co. v. Great Am. Ins. Co., 2008 U.S. Dist. LEXIS 36317, 3-4 (W.D. Wash. Apr. 23, 2008). Moreover, the form does not specify that it is releasing the sureties, rather mentioning "payment bonds" generically.[4]  Lee & Rua Co. v. Great Am. Ins. Co., 2008 U.S. Dist. LEXIS 36317, 3-4 (W.D. Wash. Apr. 23, 2008); Lackey v. McDowell, 262 Ga. 185, 415 S.E.2d 902 (1992). Perhaps the best evidence that the Michigan form waivers were not tailored specifically to Miller Act rights is the purported waiver of "construction lien rights," rights that clearly could not exist on this federal project. Rather, it is clear that the Michigan form waivers, which follow MCLS § 570.1115, were only meant to waive those payment bond rights created by state law, specifically those rights created by MCLS § 570.1116.[5] Therefore, in light of the "highly remedial" nature of the Miller Act, this Court can conclude as a matter of law that the

---

[3] Even if the Court finds that DPI has waived its Miller Act rights relative to the three claims subject to Defendants' Motion for Partial Summary Judgment, the surety defendants remain in the case because Defendants have now acknowledged some of the work related to the bell restraints, extra depth, and additional mobilization was performed after April 20, 2010. Moreover, Defendants do not alleged DPI has waived their Miller Act rights against the surety for the remaining claims that exceed $300,000. Moreover, DPI's state law claims remain active in their entirety even if the Court finds the Michigan form waivers bar DPI's Miller Act rights through April 20, 2010. Consolidated Elec. & Mechs., Inc. v. Biggs Gen. Contr., Inc., 167 F.3d 432, 435 (8th Cir. 1999).

[4] Walbridge, as the principal, would remain obligated on the payment bond as well.

[5] See also O.C.G.A. § 44-14-364.

subject waivers were not so "clear and explicit" so as to amount to a waiver of DPI's Miller Act rights.

Second, DPI had no choate Miller Act rights to waive until after 90 days had lapsed since the furnishing of the subject labor. Specifically, "[a] subcontractor's *right* of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work." United States ex rel. Walton Tech. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1205 (9th Cir. 2002) (emphasis added) (further explaining that "by the express terms of the Miller Act a subcontractor's right of recovery on a Miller Act payment bond is conditioned on the passage of time from completion of work.") Since in order to waive a right the right must be in existence[6] at the time of the purported waiver, In re Garfinkle, 672 F.2d 1340, 1347 (11th Cir. 1982), these Michigan form waivers clearly did not act to waive claims for any work performed after January 20, 2010.

Citing 40 U.S.C. § 3133(c)(3)[7] but no cases, Defendants argue that a waiver of Miller Acts rights occurs if said waiver is signed at any point after the labor was provided. However, this argument ignores Congress's intent to require any waiver of Miller Act rights to "be both voluntary and knowing." United States ex rel. Walton Tech. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1209 (9th Cir. 2002). This "knowing" requirement necessarily required DPI to know it had choate Miller Act rights, which it would not have been aware of until at least 90 days after

---

[6] This same rationale supports DPI's reliance on Article VII of the Subcontract which required Duncan to continue it work with the assurance that "any dispute to be resolved after the completion of the Work." Since Defendants did not address this argument in their reply brief, Duncan relies on its previous arguments.

[7] This section, however, does support DPI's argument that Article V of the Subcontract could not be a valid waiver of DPI's Miller Act rights regarding demobilization and extra depth because this waiver was executed before any labor or materials were provided. United States ex rel. Walton Tech. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1205 (9th Cir. 2002); Found. Fence, Inc. v. Kiewit Pac. Co., 2010 U.S. Dist. LEXIS 108915 (S.D. Cal. Oct. 13, 2010).

providing the services, prior to signing the waivers. Therefore, even if the Court concludes the Michigan form waiver amounted to a waiver of some Miller Act rights, under the "highly remedial" Miller Act, DPI did not waive any Miller Act rights for any work performed after January 20, 20110.

**B.     DPI Timely Provided Notice**

Without offering any justification, Defendants ask this Court to ignore the Subcontract's incoporation of FAR 52.243-4. However, this Court must "avoid an interpretation that would render any part of the contract surplusage or nugatory." Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 468, 663 N.W.2d 447, 454 (2003); see also Bd. of Regents v. A. B. & E., 182 Ga. App. 671, 675, 357 S.E.2d 100, 103 (1987). Rather, Defendants continue to rely on the provision that purportedly required certain written quotes to be issued within 14 days of the directed work. However, by the plain language of Article VII, a failure of DPI to provide the written quote within 14 days does not amount to forfeiture of a right to payment, but rather simply shifts the process by which the price or cost of the directed work is determined. Therefore, summary judgment cannot be granted on this ground.

Defendants also argue Article XXVII of the Subcontract precludes the conclusion that Walbridge waived notice requirements pursuant to the Subcontract. (Defendants' Reply Brief, p. 6). However, Article XXVII includes no such provision. "In any event, in Michigan, even a written clause purporting to prohibit oral modification is not necessarily always conclusive. Mich. Elec. Emples. Pension Fund v. Encompass Elec. & Data, Inc., 556 F. Supp. 2d 746, 762 (W.D. Mich. 2008); See also Flint Auto Auction v. William B. Williams Sr Trust, 2011 Mich. App. LEXIS 2098, 4-5 (Mich. Ct. App. Nov. 22, 2011) ("an anti-waiver clause in a contract does not preclude a finding that a party waived a contractual right, although the party asserting a

waiver must show that the parties to the contract mutually intended to waive or modify it.") Similarly, under Georgia law, "[a] provision against waiver of contractual rights may itself be waived." Circle Y Constr., Inc. v. WRH Realty Servs., 721 F. Supp. 2d 1272, 1279 (N.D. Ga. 2010) (citing J.E.M. Enterprises, Inc. v. Taco Pronto, Inc., 145 Ga. App. 573, 575 (1978)). Therefore, based on the considerable evidence that Walbridge did not understand and failed to follow the subcontract it drafted, there is clear, compelling, and convincing evidence that Defendants have waived any notice provision and any anti-waiver provision in the Subcontract.

**C.    DPI Adequately Plead Tort Claim**

DPI specifically averred as follows:

64.

Walbridge, without authority from or permission of Duncan Pipeline, has exercised dominion over the equipment inconsistent with Duncan Pipeline's rights in the equipment.

65.

The value of the equipment wrongfully appropriated by Walbridge has been decreased due to Walbridge's unauthorized acts.

66.

Duncan Pipeline is entitled to damages against Walbridge due to Walbridge's tortuous activities.

(Complaint, Doc. 1).

These allegations clearly state a claim for relief pursuant to O.C.G.A. § 51-10-3, which provides a tort for "[a]ny unlawful abuse of or damage done to the personal property of another. . . ." O.C.G.A. § 51-10-3 (2012).

Under the notice pleading standards of the Federal Rules of Civil Procedure, "a complaint need not point to the appropriate statute or law in order to raise a claim for relief." Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992). A "complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as long as relief is possible under any set of facts that could be established consistent with the allegations." Id.; Gonzalez-Perez v. Hosp. Interamericano de Medicina Avanzada (HIMA), 355 F.3d 1, 5 (1st Cir. 2004) (same). A "complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." Simonton v. Runyon, 232 F.3d 33, 36-37 (2d Cir. 2000); see also Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118, 1123-1124 (11th Cir. 2006) ("formulaic misstep by counsel is not fatal under the notice pleading standard (where fair notice is all that is required) of Federal Rule of Civil Procedure 8(a)").

Defendants cite to irrelevant cases regarding the timeliness of any amendment to DPI's complaint. DPI does not seek amendment of its complaint because the complaint "gives full notice of the circumstances giving rise to the plaintiffs' claim for relief" based on Walbridge's unauthorized use of DPI's equipment. Defendants, also for the first time in their reply brief, argue that DPI was in default pursuant to the subcontract. However, there is no evidence that DPI was ever in default pursuant to the Subcontract. Moreover, Article XIV(iii) of the Subcontract requires an "additional forty-eight (48) hours' written" notice of allegations of default prior to Defendants being allowed to use DPI's equipment. There is absolutely no evidence that occurred here. In fact, the July 14, 2010 letter, which Defendants' reference in their reply brief, was not an indication that DPI left the Ft. Stewart project, since DPI was still on the job in September 2010. (Walker Dep. p. 102). Since DPI was not in default, Article XIV(iii)

of the Subcontract is completely irrelevant. Because DPI has satisfied the applicable notice pleading requirement regarding its tort claim and Defendants had no privilege to use the subject equipment, Defendants' Motion for Partial Summary Judgment on this ground must be denied.

### III. CONCLUSION

DPI has not waived its state law or Miller Act claims based on its execution of the subject Michigan waiver forms. DPI timely provided notice of its claims for additional compensation and has adequately plead the facts that support its claim that Walbridge damaged DPI by appropriating DPI's equipment for its own benefit. For these reasons and those reasons stated in DPI's initial response brief, Defendants' Motion for Partial Summary Judgment must be denied.

Respectfully submitted this 25th day of July, 2012.

HALL, BOOTH, SMITH & SLOVER, P.C.

/s/ Joel L. McKie
James H. Fisher, II
Georgia Bar No. 261850
Denise W. Spitalnick
Georgia Bar No. 746210
Joel L. McKie
Georgia Bar No. 585780
*Attorneys for Plaintiff*

191 Peachtree Street, NE
Suite 2900
Atlanta, GA 30303-1775
(404) 954-5000
(404) 954-5020 (facsimile)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> for the use and benefit of DUNCAN PIPELINE, ) <br> INC., a Georgia corporation, and DUNCAN ) <br> PIPELINE, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> WALBRIDGE ALDINGER ) <br> COMPANY, a Michigan corporation; ) <br> TRAVELERS CASUALTY AND SURETY ) <br> COMPANY OF AMERICA; a Connecticut ) <br> corporation; and LIBERTY MUTUAL ) <br> INSURANCE COMPANY, a Massachusetts ) <br> corporation, ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> FILE NO. 4:11-CV-00092-WTM-GRS |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of Plaintiffs' Sur-reply Brief in Opposition to Defendants' Motion for Partial Summary Judgment has hereby been filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Eric L. Nelson, Esq.
Joseph C. Staak, Esq.
Smith, Currie & Hancock, LLP
2700 Marquis One Tower
245 Peachtree Center Ave.
Atlanta, GA 30303-1227

This 25th day of July, 2012.

HALL BOOTH SMITH & SLOVER, P.C.

*/s/ Joel L. McKie*
Joel L. McKie, Esq.

- 12 -